ROBERT F. LANE *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 7275)

Submitted April 20, 1932. Decided April 26, 1932.

*England & Ritchie*, for relator.

*H. B. Lee*, Attorney General, and *R. Dennis Steed*, Assistant Attorney General, for compensation commissioner.

*Conley & Klostermeyer*, for Coalburg-Kanawha Mining Co.

HATCHER, PRESIDENT:

This is a proceeding in mandamus against the state compensation commissioner to compel him to complete the payments on an award made the petitioner, R. F. Lane.

The facts developed in the proceeding follow. Three of Lane's ribs were fractured (near the spinal column) on October 7, 1927, while he was at work for Coalburg-Kanawha Mining Company, a subscriber to the workmen's Compensation Fund. A hospital report, dated January 10, 1930, shows that the fractures were healed firmly and "in good surgical position" but that Lane used crutches and complained of pain in his back and inability to use his left leg. On June 1, 1930, Dr. R. R. Summers of Charleston made a like report on Lane to the commisioner, saying he could find no cause for the disability of Lane's leg. Lane continued on crutches and the Mining Company finally protested his slow recovery to the commissioner. On December 12, 1930, the commissioner wrote the company: "From suggestions made I would not call him (Lane) a malingerer. * * * If you can find any evidence from a medical standpoint to convince the commissioner that this man is malingering and is not injured, I shall be glad to have it." The company replied on December 17, 1930, "From the several and only doctors who have had this man (Lane) under observation we understand that he is undoubtedly malingering", and enclosed the following letter from Dr. John E. Cannaday of Charleston to the Company's physician, dated September 16, 1930: "As suggested by Doctor Easley patient (Lane) was given ether anesthesia and as soon as he was under the influence of the anesthesia the symptoms of paralysis in the left leg immediately disappeared. He also stood up and walked. When he was fully conscious, however, he drew the leg up into its usual position. In my opinion this is a pure case of hysteria and believe the thing to do is to take the man's crutches away from him and try to talk him out ot it." Thereupon the commissioner placed Lane under the care of Dr. C. W. Stallard of Montgomery, who, after examining him meticulously and treating him for several months, reported to the commissioner on April 28, 1931 (in effect), that he found nothing to account for the lameness except hysteria and that Lane could then walk without the use of crutches. On May 4, 1931, the commissioner mailed a copy of Dr. Stallard's report to the company and informed it that the evidence in Lane's case

"indicates that the claimant should be awarded a fifty per cent disability." The record discloses no reply from the company to this communication. On May 15, 1931, the commissioner made a fifty per cent award to Lane payable in monthly installments, of which action the company was notified at once. It took no steps in the matter until June 30, 1931, when it asked that the case be re-opened. This was done, depositions were taken, and on January 7, 1932, the commissioner set aside and ceased payments on the award.

The depositions of six witnesses were taken after the case was re-opened—Lane, three of his neighbors, Dr. Stallard, and Dr. W. V. Wilkerson who observed Lane while he was in the charge of Dr. Stallard. Lane maintained he had acted in entire good faith about the extent of his injuries, that he still suffered severely from his back, and that his leg was still lame. Each neighbor testified severally to an occasion in the fall of 1930 when Lane had been seen going around without his crutches or discarding them temporarily while walking. Dr. Stallard testified that in his opinion Lane had suffered "conscientiously" from hysteria, and defined the word hysteria as used by him to indicate "a condition that the patient believes he has, but has no pathological condition to acount for it." The doctor was further of opinion that Lane's persistent limping was due to habit and that he was able to return to work. Dr. Wilkerson testified that after observing certain variations from day to day in the manifestation of Lane's disability, he was led to believe "that there was an element of malingering present."

We have repeatedly held as Code 1931, 23-5-1, provides, that ordinarily an award of the commissioner becomes final after ten day's notice to the interested parties, if not objected to. That holding is subject to this exception: the case may be re-opened after the ten-day period when facts are disclosed which are not cumulative, have not theretofore been considered by the commissioner and present an entirely different situation. This case, however, does not come within the exception. The deposition of Dr. Stallard differs in no material respect from his report made prior to the award. Neither Lane's neighbors nor Dr. Wilkerson had testified

prior to the award; but as far as their evidence tends to support the charge of malingering, it is merely cumulative, for that charge was specifically made and evidence thereon presented by the company in its letter to the commissioner of December 17, 1930. The charge was not summarily disposed of but was under careful investigation and consideration by the commissioner for more than four months during which the company had ample opportunity but failed to supplement its evidence supporting the charge. So, the same question—malingering—is sought to be raised now, which was presented and disposed of before the award. Its finality cannot be disturbed in this manner.

Therefore, the writ is awarded.

*Writ awarded.*